UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 13**     **7177**

----------------------------------------------------------x

SHARON GUZI,

                        Plaintiff,

                  -against-

THE CITY OF NEW YORK; POLICE OFFICER
ALFREDO WELLS, SHIELD # 12329; OFFICER
RODNEY VELEZ, SHIELD # 2125; and SERGEANT
TIN MAI, SHIELD # 03168,

                        Defendants,

----------------------------------------------------------x

13 Civ. _____ (        )

**COMPLAINT
AND JURY DEMAND**

3LASSER, J.

SCANLON, M.J.

        Plaintiff Sharon Guzi, by and through her attorneys, Emery Celli Brinckerhoff &

Abady LLP, for her Complaint alleges as follows:

### INTRODUCTION

       1.     This is a civil rights action seeking damages for Defendants' violations of

Plaintiff's rights, privileges, and immunities under the United States Constitution, 42 U.S.C. §

1983, and the New York State common law.  The suit arises from an incident on January 15,

2013, during which Defendants wrongfully assaulted, falsely arrested, falsely detained,

wrongfully imprisoned and severely injured Plaintiff, a young, college graduate with no criminal

record who had never been arrested before the incident complained of in the instant complaint.

### THE PARTIES

       2.     Plaintiff Sharon Guzi is a citizen of the United States and at all relevant times

hereto was a resident of Brooklyn, New York.

       3.     Defendant Police Officer Alfredo Wells, Shield # 12329, at all times relevant

hereto, was a police officer of the New York Police Department ("NYPD") Transit District 34,

acting in the capacity of agent, servant, and employee of the City and within the scope of his employment as such.

4.      Defendant Police Officer Rodney Velez, Shield # 2125, at all times relevant hereto, was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of the City and within the scope of his employment as such.  Upon information and belief Defendant Velez is an Officer within NYPD Transit District 34.

5.      Defendant Sergeant Tin Mai, Shield # 03168, at all times relevant hereto, was a Sergeant of the NYPD Transit District 34, acting in the capacity of agent, servant, and employee of the City and within the scope of her employment as such.

6.      Officer Defendants Wells, Velez and Mai are referred to herein as the "Officer Defendants."  The Officer Defendants were acting under the color of state law, at all times relevant hereto.

7.      Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York.  At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including those within Transit District 34.  In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD patrol guide), and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

8.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and the New York State common law.

2

9.       The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(4), 1367(a), and the doctrine of pendent jurisdiction.

10.      The acts complained of occurred in the Eastern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

11.      Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

12.      On or around 5:05 PM on January 15, 2013, Ms. Guzi sat in her car near the corner of Sheepshead Bay Road and East 15th Street in Brooklyn.  Ms. Guzi, a recent graduate of Brooklyn College who majored in Psychology, has no criminal record and had never been arrested before January 15, 2013.

13.      Ms. Guzi's car was pulled over to the side of the road on Sheepshead Bay Road, at a bus stop, as she was dropping off her companion to purchase an item from the local deli.

14.      An NYPD Transit District vehicle pulled up to the intersection and parked several feet in front of Ms. Guzi's car.

15.      Officer Defendants Wells, Velez, and Mai then exited the Transit District vehicle and approached Ms. Guzi's car.  Defendant Wells angrily told Ms. Guzi that she was improperly parked, and that the Officer Defendants had been forced to sit in traffic because of her.

16.      Ms. Guzi politely explained that she had just dropped off somebody who was currently inside of the local deli and was ready to leave.

17.      Defendant Wells then ordered Ms. Guzi to provide him with her license, insurance information, and the car's registration, and to turn off the car and give him her keys.

18.      Ms. Guzi complied with Defendant Wells' orders.

3

19. Defendant Wells then placed Ms. Guzi's keys on the roof of her car, and walked away from her car towards the NYPD Transit District vehicle.

20. Ms. Guzi waited in her car patiently for Officer Wells to run her license and registration. However, she became alarmed that her keys were simply sitting on the roof of her car, unattended, while a large number of strangers milled about on the street next to her car. As a result, and as a safety precaution, Ms. Guzi took the keys off the roof of the car and placed them in her lap.

21. When Officer Wells returned to Ms. Guzi's vehicle, Ms. Guzi informed Officer Wells that she had placed the keys in her lap because she was worried about them being left unattended on the roof.

22. Officer Wells became very angry, and informed Ms. Guzi that he was going to write her another ticket.

23. Ms. Guzi apologized to Officer Wells and asked what she had done to cause her to receive another ticket. Officer Wells did not respond and walked away.

24. Officer Wells then walked back to the car. At this point, Officer Wells ordered Ms. Guzi to get out of the car and told her that she was under arrest.

25. As soon as Ms. Guzi opened the car door, Officer Wells violently grabbed her neck and left arm, pulled her out of the car, and in the process knocked over her handbag, spilling its contents onto the street.

26. Officer Wells then dragged her, by her left arm, to the outside of a storefront on Sheepshead Bay Road.

27. The extreme, excessive, and unnecessary force that Officer Wells used in dragging her out of the car broke Ms. Guzi's left arm, causing her to feel shooting, sharp and severe pain.

28. Officer Defendants Velez and Mai were present throughout this encounter. However, Officer Defendants Velez and Mai failed to intervene to prevent Officer Defendant Wells' baseless and unjustifiable attack upon Ms. Guzi.

29. Officer Wells ordered Ms. Guzi to place her hands behind her back, even though Ms. Guzi informed him that she felt intense pain in her arm and believed that her left arm was broken.

30. Officer Wells then kept Ms. Guzi standing in public view in front of the storefront, even though Ms. Guzi was in excruciating pain, crying, and embarrassed.

31. Officer Wells eventually took Ms. Guzi to sit in the back of the Transit District Vehicle and cuffed her hands behind her back, despite the fact that Ms. Guzi felt shooting pain in her arm and informed him, correctly, that her arm was broken.

32. At no point during this encounter did Ms. Guzi engage in any conduct that justified Officer Wells' use of excessive force.

33. Ms. Guzi was moved to the back of a second Transit District Vehicle. Ms. Guzi then sat in the back of this second Transit District Vehicle, in excruciating pain and with her hands cuffed behind her back, for an extended period of time, waiting for an ambulance to arrive.

34. After complaining multiple times about the excruciating pain caused by the handcuffing of her broken arm, the handcuffs were finally removed and Ms. Guzi's feet were shackled instead.

35. Ms. Guzi's mother arrived at the scene while her daughter sat in the police vehicle at the scene.

36. The Officer Defendants lied to Ms. Guzi's mother and told her that Ms. Guzi had already been transported to the hospital, even though Ms. Guzi was sitting in the back of the Transit District Vehicle, several feet away.

37. One of the Officer Defendants finally drove Ms. Guzi to Lutheran Medical Center ("Lutheran") when it became apparent that the ambulance that had allegedly been dispatched was not going to arrive on the scene.

38. At Lutheran, Ms. Guzi's left arm was x-rayed, and she was diagnosed with a left humeral shaft fracture.

39. Ms. Guzi was given medication while at Lutheran, including but not limited to morphine through an intravenous drip and Codeine, due to the excruciating pain.

40. During Ms. Guzi's time at Lutheran, the Officer Defendants shackled Ms. Guzi's legs and cuffed her right arm to the bed. The Officer Defendants demanded that she remain shackled and cuffed throughout her time at the hospital, even though Ms. Guzi posed absolutely no risk of flight.

41. At approximately 8 AM the next morning, January 16, 2013, Ms. Guzi was taken from Lutheran to the 72nd Precinct, and then to Central Booking in downtown Brooklyn.

42. Ms. Guzi was kept in a cell in Central Booking until approximately 8 PM on the evening of the 16th.

43. During the day she spent in Central Booking, Ms. Guzi was not provided with any painkillers or medication, even though her arm was swollen and causing her intense pain.

44. Ms. Guzi was then falsely charged with disorderly conduct and resisting arrest.

6

45.     At no point during the encounter had Ms. Guzi engaged in disorderly conduct and/or resisted the Officer Defendants' attempt to arrest her.

46.     Ms. Guzi was forced to wear a humeral fracture brace until the end of July 2013. Although she was initially told that she could stop wearing the brace after 3 months and then begin physical therapy, the fracture did not heal properly and Ms. Guzi was forced to continue wearing the brace for over 6 months.

47.     For the months following the assault, Ms. Guzi was in extreme pain, and was prescribed medication, including Percocet and Valium, to attempt to alleviate this pain. This medication, though necessary because of the intense pain, had unpleasant side effects, including gastrointestinal distress, nausea, dizziness, and headaches.

48.     As a result of the Officer Defendants' unlawful breaking of her arm, Ms. Guzi was required to completely restructure her life. She was forced to rely on family members' assistance to meet her daily, basic needs: Ms. Guzi could not drive herself anywhere, could not cook or eat without assistance, could not shower without assistance, and could not participate in any household chores.

49.     In May of 2013, Ms. Guzi began going to physical therapy appointments approximately three times per week.

50.     Since Ms. Guzi's health insurance provider has refused to pay for additional physical therapy visits, she currently goes to physical therapy whenever she can afford to do so, approximately twice per month.

51.     Ms. Guzi's doctor tells her that he expects that she will not regain normal use of her arm for at least two years, and that even then, there may be lasting and permanent physical effects from the injury.

52.     Ms. Guzi's range of motion in her left arm is limited, and her left arm has been significantly weakened. She has been forced to give up playing tennis, a sport that she enjoyed and played on a regular basis before this unlawful assault. As a result of the injury to her left arm, it is difficult for Ms. Guzi to carry items, to open doors, to get dressed in the morning, to bathe herself, and to complete other daily life activities.

53.     Ms. Guzi has suffered extreme emotional distress as a result of the Officer Defendants' attack. She suffers from nightmares and anxiety, and she has been unable to sleep soundly since the attack.

54.     Ms. Guzi has seen a psychologist on a weekly basis since May 2013 to help to deal with the trauma and anxiety associated with the Officer Defendants' unlawful assault.

55.     In addition, Ms. Guzi's injury forced her to give up a job she had lined up working as an assistant at a dental office, as Ms. Guzi was unable to meet the job's requirements after she had broken her arm.

56.     As a result of the events detailed in this Complaint, Ms. Guzi suffered injuries including: a violation of her civil rights, loss of liberty, emotional and psychological distress, pain and physical injury, embarrassment, fear, apprehension, impairment of emotional stability, loss of income, and medical expenses.

57.     On September 17, 2013, Ms. Guzi accepted an adjournment in contemplation of dismissal on the fabricated disorderly conduct and resisting arrest charges.

58.     Ms. Guzi filed a notice of claim regarding this incident on March 19, 2013, within 90 days of the incident.

59.     At the Defendant City's request, Ms. Guzi attended a N.Y. Gen. Munic. L. § 50-H hearing regarding her claim on November 19, 2013.

60.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

61.     This action is being filed within one year and 90 days of the incident.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – False Arrest

62.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

63.     Officer Defendants wrongfully and illegally arrested and detained Plaintiff, and/or failed to intervene to prevent the Plaintiff's wrongful arrest and detention, and falsely charged her with resisting arrest and disorderly conduct.

64.     The wrongful, unjustifiable, and unlawful apprehension, arrest and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

65.     At all relevant times, Officer Defendants acted forcibly in apprehending and arresting Plaintiff.

66.     Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, and falsely charged.

67.     At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable or reasonable cause.

68.     All this occurred without any fault or provocation on the part of Plaintiff.

69.     Officer Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their employment as NYPD officers. Said acts by Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and all Officer Defendants acted willfully, knowingly, and

with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. §
1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

70.     As a direct and proximate result of the misconduct and abuse of authority detailed
above, Plaintiff sustained the damages herein before alleged.

### SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Excessive Force

71.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set
forth at length herein.

72.     By using excessive force and assaulting Plaintiff, and by failing to intervene and
preventing other Officers from using excessive force, Officer Defendants deprived Plaintiff of
her rights, remedies, privileges, and immunities guaranteed to every citizen of the United States,
in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth
and Fourteenth Amendments of the United States Constitution.

73.     Officer Defendants acted under pretense and color of state law and in their
individual and official capacities and within the scope of their respective employments as NYPD
officers. Said acts by Officer Defendants were beyond the scope of their jurisdiction, without
authority of law, and in abuse of their powers, and said Officer Defendants acted willfully,
knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by
42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States
Constitution.

74.     As a direct and proximate result of the misconduct and abuse of authority detailed
above, Plaintiff sustained the damages hereinbefore alleged.

10

## THIRD CAUSE OF ACTION
Battery

75.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

76.     Officer Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered Plaintiff, when they broke Plaintiff's arm by dragging her out of her car with the intention of causing harmful and/or offensive bodily contact to the Plaintiff and caused such battery, and/or failed to intervene to prevent the other Officer Defendants from doing so.

77.     Officer Defendants, their officers, agents, servants, and employees were responsible for Plaintiff's battery.  Defendant City, as employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

78.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Assault

79.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

80.     Officer Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted Plaintiff, and/or failed to intervene to prevent the assault of Plaintiff, in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did violent and/or menacing act(s) which threatened such contact to the Plaintiff, and that such act(s) caused apprehension of such contact in the Plaintiff.

81.     Officer Defendants, their officers, agents, servants, and employees were

11

responsible for the assaults on Plaintiff. Defendant City, as employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

82.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
### False Arrest

83.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

84.     The acts and conduct of the Officer Defendants constitute false arrest and false imprisonment under the laws of the State of New York. Officer Defendants intended to confine Plaintiff and/or failed to intervene to prevent the confinement of the Plaintiff; Officer Defendants, in fact, confined Plaintiff; and Plaintiff was conscious of the confinement. In addition, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

85.     Officer Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York Police Department, which are therefore responsible for their conduct.

86.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
### Negligent Hiring, Training, Discipline, and Retention of Employment Services

87.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

88.     The City, through the NYPD, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by Plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

89.     Upon information and belief, the Officer Defendants were unfit and incompetent for their positions as police officers.

90.     Upon information and belief, the City knew or should have known through the exercise of reasonable diligence that the Officer Defendants were dangerous.

91.     Upon information and belief, the City's negligence in hiring, training, disciplining, and retaining the Officer Defendants proximately caused Plaintiff's lasting physical, mental, emotional and professional injuries and scars.

92.     Upon information and belief, because of the City's negligent hiring, training, discipline, and retention of the aforementioned Officer Defendants, Plaintiff incurred significant and lasting physical, mental, and emotional injuries.


WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

   a.     Compensatory damages in an amount to be determined at trial;

   b.     Punitive damages against the Officer Defendants in an amount to be determined at trial;

   c.     Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

   d.     Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      December 17, 2013

                  EMERY CELLI BRINCKERHOFF
                  & ABADY LLP

                  By: _____
                      Jonathan S. Abady
                      Jennifer M. Keighley

                  75 Rockefeller Plaza, 20th Floor
                  New York, New York 10019
                  (212) 763-5000

                  *Attorneys for Plaintiff*

14